IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAREN CASTON-PALMER,<br>also known as KAREN CASTON,<br>individually and on behalf of the class<br>defined herein,<br><br>                    Plaintiff,<br><br>         vs.<br><br>NCO PORTFOLIO MANAGEMENT, INC.,<br><br>                    Defendant. | FILED: MAY 15, 2008<br>08CV2818           AEE<br>JUDGE KENNELLY<br>MAGISTRATE JUDGE VALDEZ |

## COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE CLAIMS

### INTRODUCTION

1.      This action seeks redress for the conduct of defendant, a debt buyer, in filing collection actions on purported debts to which it did not have lawful title.

2.      There is a substantial problem with debt buyers suing on debts that they do not own and have no right to sue on.

3.      There are multiple reported cases in which debtors have been subjected to litigation because they "settled" with A and then B claimed to own the debt. Smith v. Mallick, 514 F.3d 48 (D.C.Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer [possibly fraudulently] settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result). See also, Miller v. Wolpoff & Abramson, LLP, 1:06-CV-207-TS, 2008 U.S. Dist. LEXIS 12283 (N.D.Ind., Feb. 19, 2008), where a debtor complained he had been sued twice on the same debt; Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 923 (N.D.Ill. 2000), where the debtor claimed he settled with one agency and was then dunned by a second for the same debt, and Northwest Diversified, Inc. v. Desai, 353 Ill.App.3d 378, 818 N.E.2d 753 (1st Dist. 2004), where a commercial debtor paid the

creditor only to be subjected to a levy by a purported debt buyer.

    4. In <u>Wood v. M&J Recovery LLC,</u>. CV 05-5564, 2007 U.S. Dist. LEXIS 24157 (E.D.N.Y., April 2, 2007), a debtor complained of multiple collection efforts by various debt buyers and collectors on the same debt, and the defendants asserted claims against one another disputing the ownership of the portfolio involved. Shekinah alleged that it sold a portfolio to NLRS, that NLRS was unable to pay, that the sale agreement was modified so that NLRS would only obtain 1/5 of the portfolio, and that the 1/5 did not include the plaintiff's debt. Portfolio claimed that it and not Shekinah is the rightful owner of the portfolio.

    5. In <u>Associates Financial Services Co. v. Bowman, Heintz, Boscia & Vician, P.C.</u>, IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, *9-12 (S.D.Ind., April 25, 2001), later opinion, 2004 U.S. Dist. LEXIS 6520 (S.D. Ind., Mar. 31, 2004), allegations were made that a creditor had continued to collect accounts allegedly sold to a debt buyer.

    6. An article that appeared in the trade press shortly before the extension of the Illinois Collection Agency Act to debt buyers stated:

> More collection agencies are turning to the debt resale market as a place to pick up accounts to collect on. Too small to buy portfolios directly from major credit issuers, they look to the secondary market where portfolios are resold in smaller chunks that they can handle.
>
> But what they sometimes find in the secondary market are horror stories: The same portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put up for sale; half the accounts are out of statute; accounts are rife with erroneous information; access to documentation is limited or nonexistent. . . . .

Corinna C. Petry, <u>Do Your Homework; Dangers often lay hidden in secondary market debt portfolio offerings. Here are lessons from the market pros that novices can use to avoid nasty surprises</u>, Collections & Credit Risk, March 2007, pg. 24 Vol. 12 No. 3.

    7. Courts have also dismissed numerous collection and foreclosure lawsuits filed in the names of entities that did not own the purported debts. <u>In re Foreclosure Cases</u>, 1:07CV2282 and 14 others, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio Oct. 31, 2007); <u>In re Foreclosure Cases</u>, 07-cv-166 and 18 others, 2007 U.S. Dist. LEXIS 90812 (S.D.

Ohio Nov. 27, 2007); In re Foreclosure Cases, 521 F. Supp. 2d 650 (S.D.Ohio. 2007); In re Foreclosure Cases, 07-cv-166 and 14 others, 2007 U.S. Dist. LEXIS 95673 (S.D.Ohio, Dec. 27, 2007); NovaStar Mortgage, Inc. v. Riley, 3:07-CV-397, 2007 U.S. Dist. LEXIS 86216 (S.D.Ohio, Nov. 21, 2007); NovaStar Mortgage, Inc. v. Grooms, 3:07-CV-395, 2007 U.S. Dist. LEXIS 86214 (S.D.Ohio., Nov. 21, 2007); HSBC Bank USA v. Rayford, 3:07-CV-428, 2007 U.S. Dist. LEXIS 86215 (S.D.Ohio., Nov. 21, 2007); Everhome Mtge. Co. v. Rowland, 2008 Ohio 1282; 2008 Ohio App. LEXIS 1103 (Ohio App. March 20, 2008) (judgment for plaintiff reversed because it failed to introduce assignment or establish that it was the holder of the note and mortgage); Deutsche Bank National Trust Co. v. Castellanos, 277/07, 2008 NY Slip Op 50033U; 18 Misc. 3d 1115A; 2008 N.Y. Misc. LEXIS 44; 239 N.Y.L.J. 16 (Kings Co., N.Y., Sup. Ct., Jan. 14, 2008); HSBC Bank USA, N.A. v. Valentin, 15968/07, 2008 NY Slip Op 50164U; 14 Misc. 3d 1123A; 2008 N.Y. Misc. LEXIS 229 (Kings Co., N.Y., Sup. Ct., January 30, 2008); HSBC Bank USA, N.A., v. Cherry, 21335/07, 2007 NY Slip Op 52378U; 18 Misc. 3d 1102A; 2007 N.Y. Misc. LEXIS 8279; 239 N.Y.L.J. 2 (Kings Co., N.Y. Sup. Ct., Dec. 17, 2007); Deutsche Bank National Trust Co. v. Castellanos, 15 Misc. 3d 1134A; 841 N.Y.S.2d 819 (Kings. Co., N.Y. Sup. Ct. 2007).

   8. Debt buyer American Acceptance has a lawsuit pending alleging that a broker of charged-off debts sold it debts to which it did not have title. American Acceptance Co. v. Goldberg, 2:08cv9 (N.D.Ind.). Another debt buyer, Hudson & Keyse, filed suit alleging that the same debt broker obtained information about consumer debts owned by Hudson & Keyse and used the information to try to collect the debts for its own account, even though it didn't own them. Hudson & Keyse, LLC v. Goldberg & Associates, LLC, 07-81047-civ (S.D.Fla., filed Nov. 5, 2007). A similar suit, alleging that the broker resold accounts it did not own, was filed by Old National Bank (Old National Bank v. Goldberg & Associates, 9:08-cv-80078-DMM (S.D.Fla., Jan. 24, 2008). The same debt broker is accused in another complaint of selling 6,521 accounts totaling about $40 million face value which it did not own. RMB Holdings, LLC v. Goldberg &

3

Associates, LLC, 3:07-cv-00406 (E.D.Tenn., filed Oct. 29, 2007). Other debt buyers have voiced similar complaints. "Florida Broker Faces Multiple Lawsuits," Collections & Credit Risk, April 2008, p. 8.

9. In order to protect Illinois residents against this sort of abuse, the Illinois Collection Agency Act ("ICAA") was amended effective January 1, 2008 to define debt buyers as "collection agencies". This makes applicable the special assignment requirements in ICAA §8b, 225 ILCS 425/8b. Illinois courts had held prior to the amendment that a party that was required to but did not have such an assignment does not have a valid claim and that the defendant in such a case is entitled to judgment. Business Service Bureau, Inc. v. Webster, 298 Ill. App. 3d 257; 698 N.E.2d 702 (4th Dist. 1998).

10. Section 8b of the ICAA provides:

> **Sec. 8b. An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided:**
>
> **(a) The assignment is manifested by a written agreement, separate from and in addition to any document intended for the purpose of listing a debt with a collection agency. The document manifesting the assignment shall specifically state and include:**
>
> > **(i) the effective date of the assignment; and**
> >
> > **(ii) the consideration for the assignment.**
>
> **(b) The consideration for the assignment may be paid or given either before or after the effective date of the assignment. The consideration may be contingent upon the settlement or outcome of litigation and if the claim being assigned has been listed with the collection agency as an account for collection, the consideration for assignment may be the same as the fee for collection.**
>
> **(c) All assignments shall be voluntary and properly executed and acknowledged by the corporate authority or individual transferring title to the collection agency before any action can be taken in the name of the collection agency.**
>
> **(d) No assignment shall be required by any agreement to list a debt with a collection agency as an account for collection.**
>
> **(e) No litigation shall commence in the name of the licensee as plaintiff unless: (i) there is an assignment of the account that satisfies the**

> **requirements of this Section and (ii) the licensee is represented by a licensed attorney at law. . . .**

11. Furthermore, the assignment must be attached to the complaint. <u>Candice Co. v. Ricketts</u>, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996).

12. Finally, the assignee is required "in his or her pleading on oath allege that he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired title. . . . "   735 ILCS 5/2-403(a).

13. Defendant NCO Portfolio Management, Inc., a debt buyer regulated by the ICAA since January 1, 2008, systematically files collection lawsuits without compliance with ICAA §8b and, therefore, without valid claims.

14. In this action, plaintiff complains that such practice violates both the Fair Debt Collection Practices Act, 15 U.S.C. §§1692e and 1692f, and ICAA §9.

## VENUE AND JURISDICTION

15. This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331, 28 U.S.C. §1337, and 28 U.S.C. §1367.

16. Venue and personal jurisdiction in this District are proper because:

    a. Defendant's collection communications and activities impacted plaintiff within this District;

    b. Defendant does business or is located within this District.

## PARTIES

17. Plaintiff is an individual who resides in the Northern District of Illinois.

18. Defendant NCO Portfolio Management, Inc. is a corporation chartered under Delaware law.

19. Defendant NCO Portfolio Management, Inc. does business in Illinois. Its registered agent and office are CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

20. Defendant NCO Portfolio Management, Inc. is engaged in the business of

purchasing charged-off consumer debts and enforcing the debts against the consumers. Defendant states on its Web site, http://www.ncogroup.com/industries/finance/port_mgmt.aspx, that "NCO Portfolio Management is ranked among the top 10 debt purchasers and serves numerous domestic and international market sectors, including financial services, health care, telecommunications, and utilities."

21. On information and belief, defendant NCO Portfolio Management, Inc. pays an average of less than ten cents on the dollar for the debts it purchases. The report on SEC Form 10-K filed by its parent NCO Group, Inc., for the year ending December 31, 2007 states (original page 9):

> Portfolio Management
>
> Our Portfolio Management business segment purchases and manages portfolios of purchased accounts receivable. With over 20 years of experience and an internal database of over 350 million customer accounts, the breadth of our ARM business provides unique insight into a wide variety of credit portfolios. As a result, we are able to adopt more disciplined and successful pricing strategies. Additionally, our scale and proprietary valuation techniques, supported by a significant amount of historical collection data, give us critical competitive differentiation in purchasing receivables. As customers tend towards offering larger portfolios, larger participants such as ourselves are better positioned to gain market share.
>
> Our portfolios of purchased accounts receivable consist primarily of delinquent consumer accounts receivable, which represent the unpaid debts of individuals to consumer creditors such as banks, finance companies, retail merchants, utilities, healthcare companies, and other consumer-oriented companies. We typically purchase accounts that are 36 to 60 months past due. In 2007, we purchased an aggregate of $5.9 billion of delinquent consumer accounts receivable for a cost of $125.3 million. Collection services for the portfolios are primarily provided to Portfolio Management by our ARM business segment. We ranked among the top 10 debt purchasers, according to data gathered by Credit & Collections World, an online industry news source, based on 2006 revenues.

22. Defendant NCO Portfolio Management, Inc. regularly uses the mails and telephones to collect debts.

23. Defendant NCO Portfolio Management, Inc. has been the plaintiff in more than 100 lawsuits filed in Illinois since January 1, 2008 and seeking to collect consumer debts.

24. Because the purported obligations were originally owed to other entities

and were charged off prior to purchase, NCO Portfolio Management, Inc. is a "debt collector" as defined in the FDCPA.

## FACTS RELATING TO PLAINTIFF

25. On or about April 11, 2008, NCO Portfolio Management, Inc. filed suit against plaintiff Karen Caston-Palmer (under the name Karen Caston) in the Circuit Court of Cook County to collect a purported debt incurred for personal, family or household purposes. NCO Portfolio Management, Inc. claimed to have purchased the debt.

26. The complaint did not attach any sort of assignment.

27. On information and belief, defendant did not have an assignment that complied with §8b of the Collection Agency Act.

28. Defendant therefore did not have any sort of valid claim and knew or should have known that it did not have a valid claim.

## FACTS – GENERAL

29. Defendant NCO Portfolio Management, Inc. regularly files lawsuits on debts it claims to have purchased without having an assignment that complies with §8b of the Collection Agency Act, and therefore, without a valid claim.

30. Defendant knows or should know it has no valid claim, but files suit anyway because consumers are unlikely to realize the fact.

31. On information and belief, based on a computer search of court records, defendant has filed over 100 such lawsuits.

## CLASS ALLEGATIONS

32. Plaintiff brings this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3). The class consists of (a) all individuals (b) against whom defendant NCO Portfolio Management, Inc. filed a collection lawsuit (c) in Illinois (d) subsequent to January 1, 2008, (e) without attaching to the complaint an assignment that complied with §8b of the ICAA.

33. The class is so numerous that joinder of all members is not practicable.

34. On information and belief, there are at least 40 individuals against whom defendant NCO Portfolio Management, Inc. filed a collection lawsuit in Illinois subsequent to January 1, 2008, without attaching to the complaint an assignment that complied with §8b of the ICAA.

35. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether defendant engages in a practice of filing lawsuits without attaching to the complaint an assignment that complied with §8b of the ICAA.

    b. Whether such lawsuits are therefore subject to a defense of which defendant knows or should know about.

    c. Whether such practice is an unfair or deceptive.

    d. Whether defendant violates the ICAA.

36. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

37. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

38. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights;

    c. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT

39. Plaintiff incorporates paragraphs 1-38.

40.     The filing and prosecution of collection lawsuits notwithstanding a known defense, in the hope that the consumer will not raise the defense, is both a deceptive collection practice, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10), and an unfair collection practice, in violation of 15 U.S.C. §1692f.

41.     Since <u>Kimber v. Federal Financial Corp.</u>, 668 F. Supp. 1480, 1488 (M.D.Ala. 1987), "bringing a lawsuit to which there appears to exist a complete defense" in the hope that the consumer will not realize it exists and will default or pay has been a violation of the FDCPA.

42.     In addition, by filing suit defendant misrepresents that it has proper title to the debt and the right to file suit, when this is not true.

43.     Section 1692e provides:

> **§ 1692e.     False or misleading representations [Section 807 of P.L.]**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(2)     The false representation of--**
>
> **(A)     the character, amount, or legal status of any debt; . . .**
>
> **(5)     The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**
>
> **(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

44.     Section 1692f provides:

> **§ 1692f.     Unfair practices [Section 808 of P.L.]**
>
> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

   (1) Statutory damages;

   (2) Actual damages;

   (3) Attorney's fees, litigation expenses and costs of suit; and

   (4) Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS COLLECTION AGENCY ACT

45. Plaintiff incorporates paragraphs 1-38.

46. Defendant is a "collection agency" as defined in the ICAA. Section 425/3(d), as amended effective Jan. 1, 2008, brings debt buyers within its purview by providing that "A person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it . . . Buys accounts, bills or other indebtedness and engages in collecting the same." Previously coverage was limited to a person who "Buys accounts, bills or other indebtedness with recourse and engages in collecting the same". By deleting "with recourse," the legislature intended to classify as a "collection agency" persons such as the defendant who buy charged-off debts for their own account.

47. Defendant violated 225 ILCS 425/8b by filing suit without an assignment in the form specified therein.

48. Defendant negligently or knowingly violated the following provisions of 225 ILCS 425/9:

> **. . .(20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. . . .**

49. A private right of action exists for violation of the ICAA. <u>Sherman v. Field Clinic</u>, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

50. Plaintiff and the members of the class were damaged as a result.

WHEREFORE, plaintiff requests that the Court grant the following relief in favor of plaintiff and the class and against defendant:

   a. Compensatory, punitive and nominal damages, as appropriate;

   b. Costs; and

      c.      Such other and further relief as is appropriate.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

51.      Plaintiff incorporates paragraphs 1-38.

52.      Defendant's conduct as set forth above constitutes both unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

53.      Defendant engaged in such conduct in the course of trade and commerce.

54.      Defendant engaged in such conduct for the purpose of obtaining money from and injuring the credit of plaintiff and others.

55.      Plaintiff and the members of the class were damaged as a result.

56.      The filing of collection lawsuits is regularly picked up and reported by credit bureaus.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

      a.      Actual damages;

      b.      Punitive damages;

      c.      An injunction against further violations;

      d.      Attorney's fees, litigation expenses and costs of suit; and

      e.      Such other or further relief as the Court deems proper.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
    & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## **JURY DEMAND**

Plaintiff demands trial by jury.

s/Daniel A. Edelman<br>Daniel A. Edelman

T:\21419\Pleading\Complaint_Pleading.wpd

## NOTICE OF LIEN

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

                                                 s/Daniel A. Edelman  
                                                 Daniel A. Edelman

Daniel A. Edelman  
EDELMAN, COMBS, LATTURNER  
      & GOODWIN, LLC  
120 S. LaSalle Street, 18th Floor  
Chicago, Illinois  60603  
(312) 739-4200  
(312) 419-0379 (FAX)